# In the United States Court of Federal Claims

**BID PROTEST**

(Filed: April 14, 2026)

|  |  |
|---|---|
| **CSI AVIATION, INC.,** | |
| *Plaintiff*, | Case No. 25-1338C |
| v. | |
| **THE UNITED STATES,** | Judge Solomson |
| *Defendant*, | |
| and | |
| **SALUS WORLDWIDE SOLUTIONS CORPORATION,** | |
| *Defendant-Intervenor*. | |

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF CONGRESSIONAL INQUIRIES INTO POTENTIAL PROCUREMENT MISCONDUCT INVOLVING SALUS WORLDWIDE SOLUTIONS

Pursuant to Federal Rule of Evidence ("FRE") 201, Plaintiff, CSI Aviation, Inc. ("CSI"), respectfully requests that the Court take judicial notice of the recent congressional inquiries directed at Salus Worldwide Solutions Corp. ("Salus") related to "potential corruption, self-dealing, and mismanagement at the Department of Homeland Security (DHS) under the leadership of then-Secretary Kristi Noem and Corey Lewandowski." Specifically, the congressional inquiries relate to allegations that Mr. Lewandowski requested kickbacks in exchange for funneling contracts to Salus, Salus' related companies, and one other contractor through Salus. As relevant here, the nearly $1 billion Comprehensive Support to Removal Operations ("CSRO") contract awarded to Salus at issue in this protest is directly cited in these congressional inquiries as part of the investigation, and thus relates to CSI's allegations of arbitrary and capricious actions with

respect to this procurement and to the Court's own stated suspicions of bad faith on the part of DHS given the more than 40 individual meetings and communications exclusively with Salus concerning the requirements and funding of the CSRO contract before conducting an obviously sham two-day "competition" prior to awarding Salus the extremely lucrative contract.

## Factual Background

On March 19, 2026, NBC News reported that DHS contractors, including Salus and a private prison operator, had been told to pay Corey Lewandowski in exchange for favorable contracting outcomes. The article stated that Mr. Lewandowski had sought "success fees" based on new or renewed contracts with DHS, and that Salus directed a potential subcontractor to indirectly pay Mr. Lewandowski as thanks for "guaranteeing" Salus a contract award.

Shortly thereafter, on March 24, 2026, the Senate issued a letter to Salus CEO, Dr. William Walters, directing Salus to preserve all records and communications related to Mr. Lewandowski from January 1, 2024 onward because "multiple Committees of jurisdiction and Members of Congress are investigating whether federal spending by the Department of Homeland Security was subject to improper influence, corruption, or other violations of federal law, under Congress's investigative and oversight authorities." Ex. A. The preservation notice explains that there have been reports "that a representative of Salus engaged in communications about financial payments for Mr. Lewandowski related to his support or assistance with Salus's federal contracting business." *Id.*

On March 30, 2026, the Senate Committee on Homeland Security and Governmental Affairs issued a letter to Salus and Dr. Walters, regarding "allegations that Corey Lewandowski . . . repeatedly solicited personal payments from government contractors, including Salus Worldwide Solutions (Salus), in exchange for favorable contract decisions," noting that, "[i]f true,

this conduct constitutes blatant corruption and a violation of federal bribery and procurement integrity laws and regulations." Ex. B at 1.  The Senate letter expressly notes Salus's "questionable no-bid DHS contract worth nearly $1 billion to administer the Trump administration's self-deportation efforts" which raises "questions about whether contracts or other transactions may have been awarded on the basis of remuneration for Mr. Lewandowski." *Id.*

Most recently, on April 2, 2026, Representative Robert Garcia issued a letter to Dr. Walters, as part of the "ongoing investigation into corruption at DHS" stating "[r]ecent reporting connects one of your companies, Salus Worldwide Solutions (Salus), to Mr. Lewandowski's alleged pay-to-play scheme, allegedly directing subcontractors to funnel taxpayer dollars to consultants affiliated with Mr. Lewandowski." Ex. C at 1.  Rep. Garcia's letter also specifically identifies Salus's three-year $1 billion DHS CSRO contract as one of the contracts awarded under "questionable circumstances," noting "serious concerns about the legitimacy of the process and whether DHS put its thumb on the scale so Salus would win regardless. *Id.* at 2.

### Request

This Court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FRE 201(b); *Confidential Informant 59–05071 v. United States*, 134 Fed. Cl. 698, 711 (2017) ("The Court of Federal Claims may take judicial notice consistent with the provisions of [FRE] 201").  Publicly available documents "may be 'freely cited' even without being included in the administrative record" because "courts must supplement the administrative record only out of necessity." *Connected Glob. Sols., LLC v. United States*, 160 Fed. Cl. 420, 424–25 (2022) (quoting *Harkcon, Inc. v. United States,* 132 Fed. Cl. 697, 701 (2017)).  Accordingly, the Court's consideration of publicly available information does not need to satisfy the heightened

standard applicable to supplementation of the administrative record and may be considered if consistent with FRE 201.  *See id.*

Here, there is no reasonable dispute of the facts that there are multiple congressional inquiries into "improper influence, corruption, or other violations of federal law" with respect to the CSRO contract awarded to Salus, because the letters from Congress to Salus's CEO, attached to this request, are *prima facie* evidence of those congressional inquiries.  *See CliniComp Int'l v. United States*, 134 Fed. Cl. 736, 749 (2017) (taking judicial notice of congressional reports).  These probative facts are directly relevant to Plaintiff's allegations that DHS's actions and pretense of a competition leading to the CSRO award to Salus a nearly one billion dollar contract subverted the procurement process, foreclosed fair competition, and violated law and regulation.  As Plaintiff has alleged and demonstrated in its briefs, DHS purposefully structured this procurement specifically so that only Salus could win, and these recent factual development shed further light on the Agency preferential treatment in its interactions with Salus.  In particular, these facts are relevant to CSI's allegations that the Agency's invocation of urgent and compelling circumstances justifying a limited "competitive" procurement was pretextual and arbitrary, and that DHS intentionally sought to limit competition from as many sources as practicable despite the legal obligation to do so.  The investigation into whether these actions were due to improper influence, corruption, or other violations of law, implicates the same considerations as Plaintiff's protest and further inform the Court's suspicions that the Agency's actions here demonstrate deliberative bad faith in the context of this procurement. *See* Oral Arg. Tr., ECF No. 50, at 104:18–21 ("[I]f I were Plaintiffs, I would have alleged here that you were determined to award to Salus and the rest was just cover. And I think that would be a solid argument . . ."); Tr. at 113:5–8 ("[I]t's the interactions with Salus and the way this develops and how they make cutoffs . . . its just not a good look").

4

## **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court take judicial notice of these facts.  As required by FRE 201(c)(2), CSI has attached the congressional letters underlying this request as Exhibits A–C.

Respectfully submitted,

*s/ Jennifer S. Zucker*
Jennifer S. Zucker
    *Counsel of Record*
Tyler E. Robinson
Christopher M. O'Brien
VINSON & ELKINS LLP
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6506
Jzucker@velaw.com